UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN P. O'ROURKE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 14-30216-MGM |
| HAMPSHIRE COUNCIL OF | * | |
| GOVERNMENTS; WILLIAM R. BARNETT, | * | |
| in his Official Capacity as Chairman of the | * | |
| Executive Committee of the Hampshire Council | * | |
| of Governments; EILEEN STEWART, in her | * | |
| Official Capacity as Vice Chairman of the | * | |
| Executive Committee of the Hampshire Council | * | |
| Of Governments; CAROL P. CONSTANT, in | * | |
| her Official Capacity as a member of the | * | |
| Executive Committee of the Hampshire Council | * | |
| of Governments; MICHAEL P. SARSYNSKI, | * | |
| JR., in his Official Capacity as a member of the | * | |
| Executive Committee of the Hampshire Council | * | |
| of Governments; GEORGE A. SYMBORSKI, | * | |
| in his Official Capacity as a member of the | * | |
| Executive Committee of the Hampshire | * | |
| Council of Governments; TODD D. FORD, in | * | |
| his Official Capacity as Executive Director of the | * | |
| Hampshire Council of Governments, | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
(Dkt. No. 15)

August 7, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

John O'Rourke ("Plaintiff"), proceeding pro se, brings this action against the Hampshire

Council Governments, as well as individual members of the Executive Committee of the Council—

William R. Barnett, Eileen Stewart, Carol P. Constant, Michael P. Sarsynski, George A. Symborski,

and Todd D. Ford, in their official capacities (together, "Defendants"). On April 2, 2015, Defendants moved to dismiss Plaintiff's complaint. (Dkt No. 15.) Plaintiff opposed this motion on May 11, 2015. (Dkt. No. 20.) The court took this motion under advisement without a hearing. (Dkt. No. 22.)

After reviewing the parties' submissions and the relevant law, the court denies Defendants' motion to dismiss with respect to Plaintiff's 42 U.S.C. § 1983 claim (Count I), Plaintiff's Conspiracy to Violate 42 U.S.C. § 1983 claim (Count IV), and Plaintiff's breach of contract claim (Count II). Assuming Plaintiff has not conceded his Open Meeting Law claim (Count III), the court will grant Defendants' motion to dismiss this claim without prejudice.

## II.   PLAINTIFF'S FACTUAL ALLEGATIONS

On February 6, 2012, Plaintiff entered into a written employment agreement with the Hampshire Council of Governments (the "Council") to serve as the Council's Director of Electricity. (Dkt. No 1, Complaint ("Compl.") ¶ 13.) This agreement provides that "[a]ll provisions of the . . . regulations and rules of the Council relating to personnel policy . . . as they now exist or hereafter may be amended . . . shall apply to [Plaintiff]." (Compl. Ex. A. 1). Plaintiff was given the aforementioned Council's Personnel Policies and Procedures Manual (the "Personnel Manual"), which set forth the specific terms and conditions of his employment, describing itself as a "covenant between the employer and employee."[1] (Compl. Ex. C. 2.) The Personnel Manual discusses, inter alia, the purpose of, length of, and protocol for discharge during, an employee's probationary period. In relevant part, it specifically provides:

    D. Probationary Period
        1. Purpose

---

[1] The manual and agreement were directly referenced in the Complaint, and were submitted by Plaintiff with his Complaint as exhibits. (Compl. Ex. A & Ex. C.) Accordingly, the court may properly consider the text of it at this stage. See Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. Mass. 2008) ("Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6).").

> The probationary period shall be utilized to observe an employee's work performance, including competency, habits, abilities, attitudes, and any other pertinent characteristic, to allow for an effective evaluation of a new employee.
>
> 2. Length of probation
>    a) Each new employee…shall be required to complete satisfactorily a six-month probationary period… .
>    b) The probationary period may be extended by the Department Head, with approval of the Executive Director, for up to six additional months if it is felt to be justified and that it could allow the employee to develop the ability to perform the duties of the position satisfactorily… .
> 3. Termination while on probation
>    At any time during the probationary period, an employee may be terminated without cause by the Department Head, with approval of the Executive Director

(Compl. Ex. C. 8.) On or about August 7, 2012, this probationary period expired for Mr. O'Rourke.

Id. ¶ 22.) The Personnel Manual later describes the protocol for discharging a non-probationary employee or Department Head, stating:

> 4. Discharge
>    a) The Executive Director with the Department Head may discharge an employee for unsatisfactory job performance, violation of Council's rules and regulations, or for any situation or instance of such seriousness that discharge is warranted.
>    b) The Executive Director, with an Executive Committee member, may discharge a Department Head for unsatisfactory job performance, violation of Council's rules and regulations, or for any situation or instance of such seriousness that discharge is warranted.
>    c) An employee shall be given written notice of the discharge signed by the appropriate Department Head and Executive Director specifying:
>    - the date of discharge;
>    - the specific behavior and dates of the behavior, as appropriate;
>    - the right to appeal the discharge and the grievance procedures to follow for an appeal.
>    d) A copy of the notice of discharge shall be placed in the employer's personnel file.

(Id. Ex. C.28.)

During the summer of 2013, the Council's Executive Committee met in private at several points.[2] (Id. ¶ 27.) On August 15, 2013, the Executive Council unanimously voted in favor of discharging Plaintiff. (Id.) On August 19, 2013, Plaintiff was notified the Executive Council made the decision to terminate him, and that his discharge was effective immediately. (Id. ¶ 33.) Plaintiff did not receive any prior notification that he was to be dismissed; he was not invited to speak on his own behalf prior to the dismissal. (Id. ¶ 35.)

Plaintiff then sent the Executive Committee a request seeking an opportunity to be heard regarding his discharge. (Id. ¶ 36.) On August 28, 2013, the Chairman of the Executive committee denied Plaintiff's request for a hearing and instructed him to direct any future correspondence to the Council's attorneys. (Id. ¶ 37.) On September 5, 2013, Plaintiff met with a Council member and an attorney for the Council and requested a hearing regarding his termination. (Id. ¶ 38.) These individuals told Plaintiff, for the first time, that his dismissal was "not for cause," and therefore that the procedural protections set forth in the Personnel Manual governing the discharging of Department Heads were "not applicable." (Id.) On that same day, Plaintiff emailed the Council member and the attorney for the Council with whom he had met, again requesting a hearing. (Id. ¶ 39.) A few hours later, on September 5, 2013, Plaintiff was notified he could appear before the Executive Committee that evening, although he was also informed that the Executive Committee would not conduct an "executive session" for him. (Id. ¶ 40.) He therefore was only permitted to appear before the Executive Committee in "open session" and under what he alleges to have been "very restrictive conditions amounting to a gag order." (Id.) Specifically, Plaintiff states he was "prohibited from questioning or speaking about his dismissal, or the multiple violations of the Council's written policies, or the multiple violations of law surrounding his dismissal." (Id.)

---

[2] Plaintiff believes the "notion of dismissing [him] for cause was raised and discussed" during these meetings, though Plaintiff does not state his factual basis for believing this. (Id. ¶ 40.)

On September 9, 2013, Plaintiff received a letter from the Council's attorney, stating that, since he had been dismissed "not for cause," "the procedure for discharging a Department Head outlined in the amended Personnel Manual" was "inapplicable and is not available to" Plaintiff. (Id. ¶ 42.) On October 18, 2013, Plaintiff filed an Open Law Meeting complaint against the Council with the Division of Open Government of the Office of the Attorney General ("AG"). (Id. ¶ 43.) The AG conducted an investigation, and found that the Executive Committee of the Council violated the Open Meeting Law in no fewer than six instances. (Id. ¶ 45.)

### III. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, a complaint must allege facts that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations in the complaint must "nudge[] [the] claims across the line from conceivable to plausible." Id. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief" is a context-specific task, requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Courts are not required to accept as true allegations in a complaint that are legal conclusions. Id. at 678. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. Therefore, in assessing a claim's plausibility, the court must construe the complaint in the plaintiff's favor, accept all non-conclusory factual allegations as true, and draw any reasonable inferences in favor of the plaintiff. See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012).

5

## IV.  ANALYSIS

### A. Procedural Due Process (Count I)

Plaintiff claims the Council deprived him of his constitutionally protected property interest in continued public employment without due process, thereby violating 42 U.S.C. § 1983, when he was allegedly terminated without notice and a chance to speak on his behalf. (Compl. ¶¶ 61-65.) Defendant argues this claim must be dismissed because "Plaintiff was an at-will employee and his employment agreement did not permit termination solely 'for cause.'" (Dkt. No. 16, Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def. Mem.") 2.) Given Plaintiff's factual allegations, as well as documents which may be properly considered at this stage, the court denies Defendant's motion to dismiss this claim.

"In order to establish a procedural due process claim under [42 U.S.C. § 1983], a plaintiff must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (internal quotation marks and corresponding citation omitted). "The Due Process Clause of the Fourteenth Amendment protects government employees who possess property interests in continued public employment." Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008) (internal quotation marks and corresponding citation omitted).

#### (1) Constitutionally Protected Property Interest

"A public employee has a constitutionally protected interest in continued employment where he has a reasonable expectation, arising out of state statute, rules or the contract, that he will continue to be employed." Perkins v. Board of Directors of School Administrative Dist., 686 F.2d 49, 51 (1st Cir. 1982). Therefore, one who can be discharged from their employment only for cause has a constitutionally protected property interest, whereas one whose may be terminated without

6

cause (one who is employed "at-will") does not. Id. For this reason, here, the question of whether Plaintiff's interest in his job rises to the level of constitutionally protected "property" depends on whether his employment relationship was such that he could only be terminated "for cause." See id. This is an issue of state law. Id.

"Massachusetts law assumes at-will employment, unless there exists, expressly or impliedly, a contract governing the terms and conditions of employment." Derrig v. Wal-Mart Stores, Inc., 942 F. Supp. 49, 54 (D. Mass. 1996). Thus, one does not have a constitutionally protected property interest in their employment by default. See Santos v. City of Fall River, 942 F. Supp. 2d 178, 188 (D. Mass. 2013) ("An at-will employment contract, without more, does not create a reasonable expectation of continued employment."). By contrast, if one is employed through an employment contract (implied or otherwise), cause is likely a prerequisite to termination. See id. at 188-189.

"It is well-settled in Massachusetts that the terms of a personnel manual may constitute an implied employment contract, thus defeating the presumption that employment is at-will." Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 352 (D. Mass. 2013) (internal quotation marks omitted). In order to determine whether a personnel manual effectively implies an employment contract, courts in this district have applied a two-pronged approach. See Derrig, 942 F. Supp. at 55. Applying state law, the court has explained that, in this context, "the central inquiries are: First, did the employee believe that the employment manual[] he or she was given constituted the terms or conditions of employment, equally binding on employee and employer[; and s]econd, was this belief reasonable under the circumstances?" Id. The Massachusetts Supreme Judicial Court has also outlined several additional factors to consider (none of which is dispositive), holding that "there is no implied contract based on the terms of a personnel manual where: (1) the employer retained the right to unilaterally modify terms; (2) the terms of the manual were not negotiated; (3) the manual stated that it provided only guidance regarding the employer's policies; (4) no term of employment was

specified in the manual; and (5) the employee did not sign the manual to manifest assent." Day v. Staples, Inc., 555 F.3d 42, 58-59 (1st Cir. 2009).

Here, a plausible inference can be made that a reasonable employee would have believed the manual, entitled "Hampshire Council of Governments Personnel Policies and Procedures" constituted a binding employment contract which permitted termination only for cause, following a six-month probationary period. See generally Derrig, 942 F. Supp. at 55. In reaching this conclusion, the court focuses on one line from the employment agreement and three separate provisions from the employment manual. (Compl. Ex. A & Ex. C.)

To begin, when Plaintiff entered into a written employment agreement with Defendants, this agreement provided that "[a]ll provisions of the . . . regulations and rules of the Council relating to personnel policy . . . as they now exist or hereafter may be amended . . . shall apply to [Plaintiff]." (Compl. Ex. A. 1.) With respect to the employment manual, itself, it broadly states at the outset that it is a "covenant between the employer and employee." (Compl. Ex. C. 2.) Moving into more specifics from the employment manual, Chapter 2, Section D describes a "six-month probationary period" for "each new employee."[3] (Compl. Ex. C. 8.) Within that section, in a subsection entitled "Termination while on probation," the manual states that, "[a]t any time during the probationary period, an employee may be terminated without cause by the Department Head, with Approval of the Executive Director." (Id.) It is significant that this is the only explicit mention of an employee's being terminable "without cause" in the entire employment manual. A plausible inference can therefore be made the manual's reference to an employee's terminability "without cause" during only a specific period, in conjunction with the complete lack of specifying an "at-will" employment relationship existed, would reasonably be interpreted as an employment contract. See generally

---

[3] While this probationary period "may be extended by the Department head...for up to six additional months" (Compl. Ex. C. 8.), there is no indication that this occurred here.

Iannelle v. Fire Comm'r of Boston, 118 N.E.2d 757, 759 (Mass. 1954) (in some situations, omission of contractual terms can aid in contractual interpretation).

Additionally, a section entitled "Discipline and Grievance" describes the circumstances under which a Department Head can be discharged. (Compl. Ex. C. 28. ) Specifically, a Department Head may be discharged for "unsatisfactory job performance, violation of Council's rules and regulations," or for "any situation or instance of such seriousness that discharge is warranted." (Id.) The notion of permitting termination only in certain egregious circumstances is tantamount to permission to terminate employees only with some level of cause, at least under the standards applicable at this stage. See generally Ferry v. Rosewood Constr. Corp., 2008 WL 5216259, *6 (Mass. Super. Ct. Nov. 5, 2008) ("personnel manuals, distributed by employers to employees can create a binding commitment insofar as employees have a reasonable expectation that the employer will adhere to the policies expressed therein.").

For these reasons, the court draws two pertinent inferences: (1) this manual effectively constituted an employment contract; (2) cause would have been required to discharge Plaintiff after the completion of his probationary period. Therefore, since Plaintiff alleges he had been employed for six month at the time of his discharge (thereby completing his probationary period), the court finds he has plausibly alleged a constitutionally protected property interest in his continued state employment.

Finding an employment contract existed, under the standards applicable at this stage, the court moves to the second prong of the inquiry to determine whether a plausible inference can be made that Plaintiff was deprived of constitutionally adequate process.

      (2) <u>Constitutionally Adequate Process</u>

The Procedural Due Process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Lowe v. Scott, 959 F.2d 323,

340 (1st Cir. 1992) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Id. "This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Id.

The Supreme Court has classified the requisite Procedural Due Process which must accompany a deprivation of a constitutionally protected property interest as "a flexible concept that varies with the particular situation." Zinermon, 494 U.S. at 127. "The [Supreme] Court has not forged a boilerplate standard for determining what process is due in all circumstances, but, instead, has articulated three areas of particular importance: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d 603, 611 (1st Cir. 1992) (quoting Mathews v. Eldridge, 424 U.S. 319, 335(1976) ("Due process is malleable, calling for such procedural protections as the particular situation demands.").).

As a general rule, courts agree that an individual is typically entitled to "some kind of a hearing before the State deprives a person of liberty or property." Zinermon, 494 U.S. at 127; see, e.g., Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 18 (1978) (hearing required before cutting off utility service); Fuentes v. Shevin, 407 U.S. 67, 80-84 (1972) (hearing required before issuance of writ allowing repossession of property); Goldberg v. Kelly, 397 U.S. 254, 264 (1970) (hearing required before termination of welfare benefits). Accordingly, courts "review cases involving adversarial hearings to determine whether, under the specific facts and circumstances of a

given situation, the affected individual has had a fundamentally fair chance to present his or her side of the story." In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d at 611. Therefore, in this context, "the Constitution requires, at a minimum, some kind of notice and some kind of opportunity to be heard," Clukey v. Town of Camden, 717 F.3d 52, 59 (1st Cir. 2013), prior to being "deprived of any significant property interest." Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014) (internal quotation marks omitted).

Based on the allegations set forth in the complaint, a plausible inference can be made that Plaintiff was not afforded constitutionally adequate process when he was discharged. Plaintiff alleges that a series of "executive sessions" occurred, at which the notion of terminating him was discussed. (Compl. ¶¶ 27-28.) He states that he was not (1) provided with any notice of these executive sessions, and therefore (2) was denied the opportunity to be present during the portions of the executive sessions that concerned him personally. (Compl. ¶¶ 30, 35.) From these allegations, it follows that he was denied any opportunity to "speak on his own behalf" or participate in any pre-termination proceeding. (Compl. ¶¶ 31, 35.) See In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig., 982 F.2d at 611. While, following his termination, Plaintiff was "permitted to appear before the Executive Committee in open session," he was "prohibited from questioning or speaking about his dismissal" at this purported post-termination hearing. (Id. ¶ 40.) As a result, the court agrees with Plaintiff, at this stage and under the applicable standards, that the appearance "could not be considered a 'hearing'" pursuant to the requirements of the Procedural Due Process Clause. (Id.) See Zinermon v. Burch, 494 U.S. 113, 127 (1990).

For these reasons, the court denies Defendants' motion to dismiss Plaintiff's claim that his Constitutional Procedural Due Process rights were violated.

    **B. Conspiracy to Violate Plaintiff's Due Process rights (Count IV)**

In order to make out an actionable conspiracy under 42 U.S.C. § 1985, a plaintiff must demonstrate both that there was a conspiratorial agreement, and that there was actual abridgement of a federally-secured right. Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). Defendant's argument that Plaintiff's "Conspiracy to Violate Due Process Rights" count should be dismissed is solely premised upon his assertion that Plaintiff's claim for a violation of his Procedural Due Process rights should be dismissed. (Def. Mem. 6-8.) As discussed above, the court finds a plausible inference can be made that Defendant's Procedural Due Process rights were violated. (See Compl. ¶¶ 29-32, 35.) For this reason, the court denies Defendant's motion to dismiss this claim.

**C. Breach of Contract (Count II)**

In his Complaint, Plaintiff alleges he had an employment contract with Defendant and it was breached.[4] (Compl. ¶¶ 66-70.) Defendant moves to dismiss this claim, arguing that Plaintiff did not have an employment contract, and (by implication) that if Plaintiff did have an employment contract, it was not breached. (Def. Mem. 8-9.) For the following reasons, the court denies Defendants' motion to dismiss this claim.

To establish a prima facie case of breach of contract, a plaintiff must show 1) there is a contract, 2) he performed his duties under the contract, 3) the defendant breached the contract, and 4) the plaintiff suffered damages as a result of the defendant's breach. Porcaro v. Chen, 2005 WL 3729056 *1 (Mass. Super. Ct. Dec. 29, 2005); see Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. Mass. 1999). If an employee reasonably believes an employer intended to offer him or her employment terminable only for cause, pursuant to terms stated in a manual or employment

---

[4] In his memorandum opposing Defendants' motion to dismiss, Plaintiff argues that he has a cause of action predicated upon a theory of common-law breach of contract as well as, additionally or alternatively, a cause of action predicated upon a theory of a breach of the implied covenant of good faith and fair dealing. (See Pl. Opp'n 12-13.) At no point in Plaintiff's Complaint does he mention the implied covenant of good faith and fair dealing. For that reason, the court is unable to consider this additional claim at this point. See Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d 119, 123 (1st Cir. 2004) ("At a bare minimum, even in this age of notice pleading, a defendant must be afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense.").

agreement, then the employee's continuing to work following receipt of that agreement or manual, pursuant to the conditions outlined in that manual, constitutes an acceptance of an offer of a unilateral contract. See O'Brien v. New England Tel. & Tel. Co., 664 N.E.2d 843, 848 (Mass. 1996).

When provisions of an employment manual effectively or impliedly form an employment contract, "[t]he employees may have a reasonable expectancy that management will adhere to a manual's provisions." Ferguson v. Host Int'l, 53 Mass. App. Ct. 96, 102 (Mass. App. Ct. 2001) (quoting O'Brien 664 N.E.2d at 848). Under these circumstances, "an affected employee's reliance on the [employment] manual would be reasonable, and [an aggrieved employee] is entitled to whatever rights that the manual set forth." Ferguson, 53 Mass. App. Ct. at 102 (quoting O'Brien, 664 N.E.2d at 848). Accordingly, the Massachusetts Appeals Court reversed the trial court's summary judgment on the defendant-employer's behalf in Ferguson v. Host Int'l where the defendant-employer did not abide by the pecuniary provisions in the employment manual when he discharged the plaintiff-employee. See 53 Mass. App. Ct. at 102.

As discussed above, the court finds a plausible inference can be made that Plaintiff and Defendants entered into an (implied) employment contract. Further, similar to the situation in Ferguson, the court finds a plausible inference can be made that Plaintiff accepted an offer of a unilateral contract, and that he reasonably could have relied upon the pertinent provisions of the employment manual/agreement. See id. It follows that Plaintiff was entitled to, inter alia, the rights set forth in the subsection laying out the manner in which Defendant could discharge a department head. See O'Brien, 664 N.E.2d at 849; Ferguson, 53 Mass. App. Ct. at 102. Therefore, if Defendant discharged Plaintiff for a reason other than those outlined as potential grounds for discharge in this section of the employment manual, Defendant may have breached this employment contract.

As discussed in the facts section, the employment manual outlines several potential reasons for which Defendants may have discharged Plaintiff, following the completion of his probationary

period. The court finds Plaintiff sufficiently alleges Defendant discharged him for a reason other than those permissible reasons outlined in this (implied) contract, and that Plaintiff suffered damages as a result. Therefore, for the purposes of the motion to dismiss and operating under the premise that Plaintiff was effectively employed pursuant to an (implied) employment contract which required at least some sort of "cause" as a prerequisite to termination, the court finds Plaintiff has sufficiently put forth a colorable breach of contract claim. Defendant's motion to dismiss this claim is denied.

### D.  Open Meeting Law (Count III)

Plaintiff also brings a claim for violation of the Massachusetts Open Meeting Law. See MASS. GEN. LAWS ch. 30A § 21(a)(1); Ghiglione v. School Committee of Southbridge, 378 N.E.2d 984, 987 (Mass. 1978) ("The open meeting law is designed to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based."). Both Defendant and Plaintiff agree the Attorney General has already investigated and come to a conclusion regarding whether Defendant violated the Open Meeting Law in this case. (Def. Mem. 9-10; Pl. Opp'n 13) See MASS. GEN. LAWs ch. 30A § 23(f). In Plaintiff's opposition memorandum, however, he seems to indicate that the determination by the Attorney General should serve only to bolster his argument that his Procedural Due Process rights were violated, as opposed to serving as an independent claim upon which he believes relief should be granted in the instant case. (Pl. Opp'n 13.)

Even if Plaintiff has not abandoned his Open Meeting Law claim, however, it is nevertheless subject to dismissal "because the [Open Meeting Law] does not provide a private right of action to an individual plaintiff." Melville v. Town of Adams, 9 F. Supp. 3d 77, 98 (D. Mass. 2014) ("Plaintiff's argument that the Office of the Attorney General was not diligent in reviewing her complaint [does not] alter[] this conclusion."); see MASS. GEN. LAWs ch. 30A § 23(f).  Rather, the law provides that "the attorney general or 3 or more registered voters may initiate a civil action to

enforce the open meeting law." Id. Therefore, since Plaintiff alone has filed this claim in the instant action, he lacks standing to bring it. See Schultz v. Kelly, 188 F. Supp. 2d 38, 56 (D. Mass. 2002) ("In the case at bar, there are only two Plaintiffs . . . As a result, Plaintiffs lack standing . . . ."). The court therefore grants Defendant's motion to dismiss this claim without prejudice.[5]

### E. Prior Settlement Agreement

Defendants have submitted a copy of a "Release and Settlement Agreement" between Plaintiff and Defendants, on December 23, 2013, along with their memorandum in support of their motion to dismiss. (Deft. Mem. & Deft. Mem. Ex. A.) Defendants argue that, since "Plaintiff seeks to re-litigate the issues surrounding his termination from employment with the Council and wages and benefits due," his claims in this case are barred. (Deft. Mem. 10.) In his opposition memorandum, Plaintiff contends the settlement agreement solely pertains to an alleged violation of the Wage Act pursuant to MASS. GEN. LAWS ch. 149 § 148. (Pl. Opp'n 14.) Independent of its factual accuracy, the court is unable to accept Defendants' premise at this stage, and therefore finds their argument unavailing.

"In ruling on a motion to dismiss, a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy, Inc., 267 F.3d at 33. There is, however, a narrow exception "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.

---

[5] Since the court has dismissed Plaintiff's Open Meeting Law Claim on this ground, the court need not reach Defendant's argument that it should be dismissed pursuant to the doctrine of res judicata. (Deft. Mem. 9-10.)

15

1993). In these situations, "[w]hen the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Alternative Energy, Inc., 267 F.3d at 33. "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Yacubian v. United States, 750 F.3d 100, 108 (1st Cir. 2014). Further, although "there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] . . . when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." Fudge v. Penthouse International, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988).

Accordingly, in Diva's Inc. v. City of Bangor, the First Circuit found that the District Court properly considered a settlement agreement, finding the "Appellants' claim that the Appellees breached the settlement agreement is dependent on the scope of the settlement agreement." 411 F.3d 30, 38 (1st Cir. 2005). Similarly, in Alternative Energy, Inc., the First Circuit found that the District Court appropriately considered the settlement agreement when the complaint referred to it "or its terms numerous times." 267 F.3d at 34.

Here, however, unlike the aforementioned cases, Plaintiff's allegations do not depend upon the settlement agreement, nor does Plaintiff reference it or its terms in the Complaint. Further, even if the court were able to properly consider the settlement agreement in ascertaining whether Plaintiff can bring this claim at this stage, the settlement agreement, itself, does not specify the specific claims by Plaintiff against Defendants that were settled under the agreement.[6] To the extent that Defendants assert the settlement agreement covered claims now brought by Plaintiff in the instant case, Plaintiff disputes this assertion. Therefore, this issue constitutes a factual dispute, and

---

[6] The document asserted to be the agreement references a "Stipulation of Dismissal With Prejudice and Without Costs, attached hereto as Exhibit A." (Deft. Mem. Ex. A. 2.) However, neither party has attached the aforementioned document referred to by the Settlement Agreement as "Exhibit A." (Id.)

16

Defendant's disputed factual assertions will not be considered at this stage. See <u>National Ass'n of Government Employees v. Mulligan</u>, 854 F.Supp.2d 126, 131 (D. Mass. 2012); <u>Weiss v. Steve's Creative Stereo & Security Systems, Inc.</u>, 2007 WL 2781887, at *2-3 (Mass. App. Ct. September 21, 2007).

For these reasons, the court finds Defendants' argument that Plaintiff's claims should be barred due to their attached settlement agreement unavailing, at least at this time.

## V. CONCLUSION

For the reasons set forth above, the court DENIES Defendants' motion to dismiss with respect to Plaintiff's 42 U.S.C. § 1983 claim (Count I), Plaintiff's Conspiracy to Violate 42 U.S.C. U.S.C. § 1983 (Count IV), and Plaintiff's breach of contract claim (Count II). Assuming Plaintiff has not conceded his Open Meeting Law claim (Count III), the court ALLOWS Defendant's motion to dismiss this claim without prejudice.

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge